IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE

Assigned on Briefs January 24, 2019

**EMIL JOHN FORD v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Knox County**
**No. 110858      Steven W. Sword, Judge**

**No. E2018-00702-CCA-R3-PC**

The Petitioner, Emil John Ford, appeals from the Knox County Criminal Court's denial of his petition for post-conviction relief. The Petitioner contends that his guilty pleas were not knowingly and voluntarily entered because he was not informed "that he could be on the sex offender registry for life." Discerning no error, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and ROBERT H. MONTGOMERY, JR., JJ., joined.

Gerald L. Gulley, Jr., Knoxville, Tennessee, for the appellant, Emil John Ford.

Herbert H. Slatery III, Attorney General and Reporter; Jeffrey D. Zentner, Assistant Attorney General; Charme P. Allen, District Attorney General; and Nathaniel Ross Ogle, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTUAL BACKGROUND**

The Petitioner was charged with one count of aggravated sexual exploitation of a minor and seven counts of sexual exploitation of a minor. On December 2, 2016, the Petitioner entered into a plea agreement with the State. The Petitioner pled guilty to the charged offenses in exchange for a total effective sentence of ten years. The Petitioner was also required to register as a sex offender, but he was not placed on community supervision for life.

At the guilty plea submission hearing, the prosecutor announced the terms of the plea agreement including the fact that the Petitioner was "to be placed on the sex offender registry." The trial court asked the Petitioner if that was his "understanding [of] what the agreement [was] in [his] case," and the Petitioner responded that it was. The Petitioner stated that he had reviewed the plea agreement form with trial counsel and that he had signed the form. The Petitioner stated that he was entering the plea agreement voluntarily and that he had not "taken anything" that would "affect [his] ability to think." The trial court repeatedly advised the Petitioner that he was required to "comply with the sex offender registry," and the Petitioner stated that he understood each time.

As a factual basis for the Petitioner's guilty pleas, the prosecutor stated that investigators had received a complaint from the Petitioner's wife that he "had been downloading child pornography." Around the same time, investigators received information from the National Center for Missing and Exploited Children that child pornography was being downloaded using the Petitioner's IP address. The investigators executed a search warrant and seized a computer and an external hard drive from the Petitioner. The Petitioner gave a statement to investigators in which he admitted that there was child pornography on his computer. A forensic examination of the computer revealed three videos and 771 images of child pornography, including images of nude toddlers "in sexually provocative positions" and "prepubescent females and males engaging in sexual acts." Additional images and videos were discovered on the external hard drive, but the State agreed not to pursue charges related to those materials as part of the Petitioner's plea agreement.

On June 20, 2017, the Petitioner filed a pro se petition for post-conviction relief. The Petitioner alleged numerous violations of his constitutional rights, including that his guilty pleas were not knowingly and voluntarily entered into because trial counsel failed to inform him that he "would be subject to lifetime registration on the Tennessee Sex Offenders [sic] Registry."[1] Counsel was appointed to represent the Petitioner in this matter, and an amended petition for post-conviction relief was filed. The post-conviction court held an evidentiary hearing on February 9, 2018.

The Petitioner claimed that trial counsel only met with him on three or four occasions for no longer than five minutes. The Petitioner further claimed that trial counsel never "interviewed" him or his wife, that trial counsel conducted no investigation of his case, that trial counsel never reviewed the discovery materials with him, that trial counsel never discussed possible defense strategies with him, and that he did not know what he was charged with until the day of his plea submission hearing.

---

[1] This opinion will focus solely on the issue raised in the Petitioner's brief. All other issues have been waived. See Tenn. R. App. P. 36(a).

The Petitioner testified that he only saw the plea agreement on the day of the plea submission hearing. The Petitioner claimed that trial counsel told him that he had "no choice" but to accept the plea agreement because he had "no defense." The Petitioner further claimed that trial counsel repeatedly said, "I can't defend you." According to the Petitioner, he signed the plea agreement form without reading it or trial counsel's reviewing it with him. The Petitioner also claimed that he passed out and hit his head just before the plea submission hearing.

The Petitioner claimed that trial counsel never discussed the sex offender registry with him or that "it was a lifetime thing." The Petitioner did not recall if the sex offender registry requirement was written on the plea agreement form. However, the Petitioner admitted that the trial court informed him that he would have to comply with the requirements of the sex offender registry. The Petitioner insisted that no one told him that "it was a life sentence" and that he would not have pled guilty if he had been aware of the length of time he would be on the sex offender registry.

Trial counsel testified that he was a former child abuse prosecutor. Trial counsel testified that he reviewed around 800 of the images found on the Petitioner's computer and external hard drive. Trial counsel also reviewed the search warrant and the Petitioner's statement to the investigators and did not find any grounds to challenge them. Trial counsel testified that he discussed the case and reviewed the discovery materials with the Petitioner. Trial counsel admitted that he took the discovery materials with him when he met with the Petitioner but did not give the Petitioner a copy of the materials.

Trial counsel recalled that he talked to the Petitioner about the risks of going to trial and that he believed the Petitioner's chances at trial were bad given the images the investigators discovered. Trial counsel was concerned that the Petitioner would receive consecutive sentences if the case went to trial and "end up with more like [forty] years."

According to trial counsel, he did not receive the ten-year offer from the State until the day before the plea deadline. Trial counsel testified that he reviewed the plea agreement form with the Petitioner, that the Petitioner signed the form, that the Petitioner did not seem impaired during the plea submission hearing, and that the Petitioner paid attention during the plea submission hearing.

Trial counsel noted that the plea agreement form stated that the Petitioner was required to register as a sex offender. Trial counsel testified that he explained to the Petitioner that he would be on the sex offender registry and the "ramifications" of that. Trial counsel believed that the Petitioner understood this.

The post-conviction court entered a written order denying post-conviction relief. The post-conviction court noted that the trial court had informed the Petitioner that he

would be required to register as a sex offender during the plea submission hearing and that this condition was listed on the plea agreement form. The post-conviction court found that the Petitioner was not credible when he testified that "he did not understand" this condition of his plea agreement. The post-conviction court concluded that the Petitioner "fully understood the consequences of his guilty plea[s]" and that they were knowingly and voluntarily entered.

## ANALYSIS

The Petitioner contends that his guilty pleas were not voluntarily and knowingly entered. The Petitioner argues that trial counsel never informed him of "the length of time that [he] would be on the sex offender registry"; therefore, he entered his guilty pleas "without an understanding of one of the essential elements of the plea agreement." The State responds that the post-conviction court did not err in denying the petition.

The burden in a post-conviction proceeding is on the petitioner to prove his allegations of fact supporting his grounds for relief by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f); see Dellinger v. State, 279 S.W.3d 282, 293-94 (Tenn. 2009). On appeal, we are bound by the post-conviction court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. Fields v. State, 40 S.W.3d 450, 456 (Tenn. 2001). Additionally, "questions concerning the credibility of witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved" by the post-conviction court. Id. However, we review the post-conviction court's application of the law to its factual findings de novo with no presumption of correctness. Id. at 457.

Post-conviction relief is available when a "conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103. Criminal defendants are constitutionally guaranteed the right to effective assistance of counsel. Dellinger, 279 S.W.3d at 293 (citing U.S. Const. amend. VI; Cuyler v. Sullivan, 446 U.S. 335, 344 (1980)). When a claim of ineffective assistance of counsel is made under the Sixth Amendment to the United States Constitution, the burden is on the petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial. Strickland v. Washington, 466 U.S. 668, 687 (1984); see Lockhart v. Fretwell, 506 U.S. 364, 368-72 (1993).

Deficient performance requires a showing that "counsel's representation fell below an objective standard of reasonableness," despite the fact that reviewing courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 688-89. Prejudice requires proof of "a reasonable probability that, but for counsel's unprofessional errors, the result

-4-

of the proceeding would have been different." Id. at 694. "Because a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim." Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996). The Strickland standard has been applied to the right to counsel under article I, section 9 of the Tennessee Constitution. State v. Melson, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

In the context of a guilty plea, like the present case, the effective assistance of counsel is relevant only to the extent that it affects the voluntariness of the plea. Therefore, to satisfy the second prong of Strickland, the petitioner must show that "there is a reasonable probability that, but for counsel's errors, he would not have [pled] guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985); see also Walton v. State, 966 S.W.2d 54, 55 (Tenn. Crim. App. 1997). However, we note that a petitioner's "[s]olemn declarations in open court carry a strong presumption of verity." Blackledge v. Allison, 431 U.S. 63, 74 (1977).

> A petitioner's sworn responses to the litany of questions posed by the trial judge at the plea submission hearing represent more than lip service. Indeed, the petitioner's sworn statements and admission of guilt stand as a witness against the petitioner at the post-conviction hearing when the petitioner disavows those statements.

Alfonso C. Camacho v. State, No. M2008-00410-CCA-R3-PC, 2009 WL 2567715, at *7 (Tenn. Crim. App. Aug. 18, 2009).

The "registration requirements imposed by the sex offender registration act are nonpunitive and . . . therefore a collateral consequence of a guilty plea." Ward v. State, 315 S.W.3d 461, 472 (Tenn. 2010). Therefore, "[a]ny failure by the [trial] court or [trial] counsel to explain fully the sexual offender registry to the Petitioner does not render his guilty plea[s] invalid." Martin Lewis Privette v. State, No. M2011-02640-CCA-R3-PC, 2012 WL 6172037, at *9 (Tenn. Crim. App. Dec. 11, 2012). Moreover, "the trial court does not determine the length of time a defendant must remain on the sex offender registry." State v. Paul Avery Reno, No. M2016-01903-CCA-R3-CD, 2017 WL 3037538, at *16 (Tenn. Crim. App. July 18, 2017). Trial counsel's failure to inform the Defendant that he "would be subject to lifetime registration" did not render his guilty pleas invalid given that trial counsel was not required to "explain fully the sexual offender registry" to the Petitioner and that the trial court had no control of the length of time the Petitioner was to remain on the registry.

Here, trial counsel testified that he explained to the Petitioner that he would be on the sex offender registry and the "ramifications" of what that meant. Additionally, the sex offender registry requirement was listed on the plea agreement form signed by the

Petitioner. The prosecutor stated at the beginning of the plea submission hearing that the Petitioner would be required to register as a sex offender. The trial court repeatedly informed the Petitioner that he would be required to register as a sex offender, and the Petitioner stated each time that he understood. Accordingly, we conclude that the post-conviction court did not err in rejecting the Petitioner's claim that his guilty pleas were not knowingly and voluntarily entered because he was unaware of the length of time he would remain on the sex offender registry.

## CONCLUSION

Upon consideration of the foregoing and the record as a whole, the judgment of the post-conviction court is affirmed.

_____
D. KELLY THOMAS, JR., JUDGE